**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| E*Trade Financial Corporation, | No. CV-17-02471-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Lance Eaton, | |
| Defendant. | |

At issue is Defendant Lance Eaton's Motion to Vacate Preliminary Injunction (Doc. 95, "Mot."), to which Plaintiff E*Trade filed a Response (Doc. 99, "Resp.") and Defendant filed a Reply (Doc. 101, "Reply"). For the reasons that follow, the Court denies Defendant's Motion to Vacate.

**I.     BACKGROUND**

Defendant worked as a Financial Consultant in E*Trade's Scottsdale branch starting in May 2011. He continued to work in that office, as well as in Chicago, until July 2017, at which point he quit and began working for Morgan Stanley. Shortly after Defendant's departure from E*Trade, Plaintiff filed this action seeking injunctive relief against Defendant for allegedly breaching his duties under the Nonsolicitation and Nondisclosure Agreement ("Nonsolicitation Agreement") Defendant had signed with E*Trade on his start date on May 16, 2011. Plaintiff also commenced an arbitration action against Defendant with the Financial Industry Regulatory Authority, Inc. ("FINRA"). (Doc. 1 at 3.)

Following limited discovery in this action, Plaintiff filed a Motion for Preliminary Injunction (Doc. 52). The Court found that Plaintiff had shown a likelihood of success on the merits of proving Defendant breached the Nonsolicitation Agreement by improperly using or taking Plaintiff's confidential information—particularly client lists and client contact information—and soliciting or inducing Defendant's clients at E*Trade to join him at Morgan Stanley. (Doc. 87 at 3–8.) Finding the three other *Winter* elements satisfied, the Court granted Plaintiff's Motion for Preliminary Injunction on April 24, 2018. (*See* Doc. 87); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008). The Court also closed the case, as the underlying merits were being adjudicated in the FINRA action.

On August 30, 2019, Defendant filed the present motion to vacate the Court's April 2018 Order. Defendant alleges that for nearly two years, Plaintiff concealed the existence of another agreement Defendant had signed contemporaneously with the Nonsolicitation Agreement, and that Plaintiff and its attorneys misrepresented such non-existence to Defendant, Defendant's counsel, and the Court. (Mot. at 4.)[1] That agreement, also signed on May 16, 2011 and titled Agreement Regarding Employment and Proprietary Information and Inventions ("Employment Agreement"), contained a California choice of law provision. The Nonsolicitation Agreement, on the other hand, specified no choice of law. The Court therefore applied Arizona law in ruling on the preliminary injunction motion.

Defendant argues that the Employment Agreement's California choice of law provision should have governed the parties' dispute. He further contends some of the Nonsolicitation Agreement's restrictive covenants, on which the Court partially predicated its Preliminary Injunction Order, would have been unenforceable under California law. Accordingly, Defendant now moves to set aside the Preliminary Injunction Order under Federal Rule of Civil Procedure 60(d)(3).

---

[1] Defendant learned of the Employment Agreement and its California law provision in May 2019, when he received it in response to a Request for Production of his E*Trade personnel file that he served in October 2018 in the FINRA arbitration. Plaintiff did not request his personnel file during discovery in this action. (*See* Resp. Ex. E.)

## II. LEGAL STANDARD

Rule 60(d)(3) allows a court to "set aside a judgment for fraud on the court." Because of a court's inherent equity power to vacate judgments obtained by fraud, this ground for relief is not subject to the same time constraints as other Rule 60 motions and consequently can be raised after one year from the date of judgment, as is the case here. *See* Fed. R. Civ. P. 60(c, d).

"Because the power to vacate for fraud on the court is so great, and so free from procedural limitations," the Ninth Circuit Court of Appeals construes it narrowly. *United States v. Estate of Stonehill*, 660 F.3d 415, 444 (9th Cir. 2011). Not all fraud is fraud on the court. *Id*. Rather, it "embrace[s] only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Id*. Indeed, the Ninth Circuit has so narrowly defined fraud on the court that it does not, without something more, encompass nondisclosure or perjury by a party or witness. *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003). Instead, it requires a "grave miscarriage of justice." *Id*. Consequently, Rule 60(d)(3) imposes the higher burden of clear and convincing evidence on the party seeking relief from judgment based on fraud on the court. *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1104 (9th Cir. 2006).

## III. ANALYSIS

Defendant argues that Plaintiff has committed fraud on the Court by failing to disclose—either through active concealment or passive nondisclosure—the Employment Agreement and by actively misrepresenting to the Court the inapplicability of California law. He maintains the Employment Agreement materially and fundamentally changes the dispute and that its concealment therefore harmed the integrity of the judicial process. (Mot. at 13; Reply at 6.)

Plaintiff counters that it never denied the existence of the Employment Agreement, but "simply argued, and continues to argue, that the [Nonsolicitation Agreement] governs

the parties' dispute." (Resp. at 1.) Plaintiff also explains why it failed to disclose the Employment Agreement earlier in this action, which the Court finds persuasive.

Both Plaintiff's in-house counsel, Jennifer Persico, and its outside counsel of record, Rhianna Hughes, aver that they were first made aware of the subject California law provision when Defendant filed this Motion. (Resp. Declaration of Jennifer Persico ("Persico Decl.") ¶ 5; Declaration of Rhianna Hughes ¶ 5.) Persico then conducted an investigation to determine the origins of the Employment Agreement. She concluded that E*Trade provided it to Eaton on his hire date by mistake and was therefore unaware of its existence earlier in this action.

More specifically, Plaintiff created—and last updated—the standard Employment Agreement when E*Trade was headquartered in California. Accordingly, E*Trade included a California choice of law provision. (Persico Decl. ¶ 7.) E*Trade then moved its headquarters to New York in 2004. According to Persico, "[f]ollowing this move, the [Nonsolicitation Agreement] should have been the only agreement governing the solicitation of customers that was provided to employees outside of California." (Persico Decl. ¶ 7.) However, when Eaton appeared for his first day of work in Scottsdale on May 16, 2011, E*Trade was apparently still administering the Employment Agreement—something Persico attributes to an "inadvertently continued and outdated company procedure." (Persico Decl. ¶ 7.)

Plaintiff submits several pieces of evidence that support the notion that E*Trade erroneously provided Defendant the Employment Agreement on his hire date, thereby explaining why Plaintiff was later unaware of its existence. Plaintiff points to Defendant's offer letter from E*Trade, which was expressly made contingent on Defendant's execution of the Nonsolicitation Agreement, but which made no mention of the Employment Agreement. (Mot. Ex. 2.) Similarly, Defendant participated in E*Trade's Incentive Compensation Plan. (Persico Decl. ¶ 17.) His eligibility under the plan explicitly hinged on him signing the Nonsolicitation Agreement and another acknowledgement form. (*See* Resp. Ex. D.) The compensation plan made no reference to the Employment Agreement.

The offer letter also contained the following integration clause: "The employment terms in this letter, the Code of Professional Conduct and the [Nonsolicitation Agreement] referred to above constitute the entire agreement between you and [E*Trade] regarding the terms and conditions of your employment and supersede any other agreement or promise that may have been made to you by anyone, whether verbal or written." (Mot. Ex. 2.) The Nonsolicitation Agreement further contained its own integration clause: "This Agreement contains the entire agreement and understanding by and between [E*Trade] and [Eaton] with respect to the covenants and subject matter contained herein, and no representations, promises, agreements, or understandings, written or oral, not herein contained shall be of any force or effect." (Resp. Ex. B ¶ 14.) Again, neither integration clause or document mentioned the Employment Agreement.

When E*Trade's recruiter emailed Eaton the offer letter on April 25, 2011, she attached (1) the offer letter; (2) a copy of the Nonsolicitation Agreement; (3) a link to the Code of Professional Conduct; (4) a list of acceptable I-9 documents; (5) a self-identification form; and (6) a general release for background checks. The email contained no attachment or reference to the Employment Agreement.[2]

Defendant casts Plaintiff's claimed ignorance of the Employment Agreement as incredible and disingenuous. He argues that Defendant had notice of the California law provision as early as July 2017. On that day, Defendant's counsel Matthew Henneman sent a letter to Persico that stated:

---

[2] Defendant submits a New Hire Checklist dated May 16, 2011, which was included in his personnel file. (Reply Ex. B.) He argues "even a cursory review" of it would have revealed that E*Trade collected Defendant's Employment Agreement on his date of hire. (Reply at 5.) However, the other six items that were marked as collected were the six items attached to and referenced in the recruiter's April 25 email. In fact, the Employment Agreement was the only document on the checklist that was *not* mentioned in the email. The Court finds it equally, if not more likely, that this reflects an error in the onboarding process in Scottsdale rather than deceit in the discovery process years later.

Further, Plaintiff sent Defendant his personnel file in response to a substantially larger discovery request. The Court is not persuaded that Plaintiff's failure to examine each item on each page of the file constitutes reckless or willful withholding of material information. As Plaintiff notes, "If E*Trade intended to mislead the Court or Eaton, it could have elected not to produce the agreement at all." (Resp. at 1.) The same logic would ostensibly apply to the New Hire Checklist.

> [Y]ou have advised that E*Trade believes Mr. Eaton has potentially breached certain obligations under a non-solicitation and non-disclosure provision in his employment agreement. This is expressly denied. To the extent such agreement is governed by California law, as previous E*Trade agreements we have reviewed have been, we note the general rule in California is that covenants not to compete are unenforceable.

(Mot. Ex. 3.)

The Court finds this insufficient to put Plaintiff on notice of the existence of the Employment Agreement. First, as Persico notes, the fact that Henneman had seen other E*Trade employment agreements with California law provisions might not necessarily surprise Persico because E*Trade continues to use those agreements with its California employees. (Persico Decl. ¶ 14.) Second, Persico responded to Henneman: "You also mentioned that the Nonsolicitation and Nondisclosure Agreement ('Agreement') dated May 16, 2011, that Mr. Eaton signed, was governed by California law and was unenforceable as a result. There is no mention of California anywhere in the Agreement." (Mot. Ex. 4 at 4.) It appears Persico understood Henneman's later as referring to a choice of law provision within the Nonsolicitation Agreement, not a separate Employment Agreement.

Defendant also directs the Court to May 2019 filings that Plaintiff made in a similar case pending in the Northern District of California. There, Plaintiff explicitly and abundantly refers to both a nonsolicitation and nondisclosure agreement <u>and</u> an employment agreement identical to the Employment Agreement in this case. (*See* Reply Ex. A.) Defendant characterizes this as hypocritical, as Plaintiff then turns around and maintains in this case that it learned of Defendant's Employment Agreement for the first time in September 2019. The Court disagrees with Defendant's portrayal. As noted above, E*Trade still utilizes the employment agreements with its California employees. In the Northern District of California case, the employee lived and worked in California the entire time she was employed by E*Trade, and then moved to a California office of Morgan Stanley. (Reply. Ex. A ¶ 2.) It would therefore be in E*Trade's regular practice to have a separate employment agreement with a California law provision. (*See* Persico Decl. ¶ 14.)

In short, Defendant has failed to meet his demanding burden of demonstrating fraud on the court by clear and convincing evidence. The Court is careful to note that this decision does not condone what appears to be sloppiness on the part of Plaintiff during Defendant's onboarding process in 2011. However, Plaintiff's eight-year-old actions are not at issue in this motion. What the Court must decide is whether Plaintiff's actions *throughout this litigation* amounts to "defilement of the court itself." The Court concludes it does not.

**IT IS THEREFORE ORDERED** denying Defendant's Motion to Vacate Preliminary Injunction Order (Doc. 95). This matter remains closed.

Dated this 9th day of December, 2019.

Honorable John J. Tuchi
United States District Judge